# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ROBERT L. WILSON,           )
                            )
         Petitioner,        )
                            )    CIVIL ACTION
                            )
                            )    No. 18-3048-KHV
WARDEN DAN SCHNURR,         )
                            )
         Respondent.        )
                            )

## MEMORANDUM AND ORDER

On February 3, 2012, the District Court of Wyandotte County, Kansas sentenced Robert L. Wilson to 586 months in prison for aggravated criminal sodomy and rape. This matter is before the Court on Wilson's pro se <u>Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody</u> (Doc. #1) filed March 1, 2018.[1] For reasons stated below, the Court denies the petition and denies a certificate of appealability.

## Factual And Procedural Background

On direct appeal, the Kansas Court of Appeals set forth the relevant facts as follows:

Around 1 p.m. on July 7, 2008, 19-year-old N.H. called the Vibeline, which is a chat line used to meet local people. Individuals calling into the chat line record greetings, and later callers can listen to the greetings to select an individual to connect with live. N.H. selected a greeting for a man claiming to be Jaylen, who said it was his birthday and that he was looking to hang out before going to work.

N.H. connected with Jaylen, and he told her that he wanted to go to the movie theater off of Ward Parkway. He also said that he lived by the Legends shopping center, worked at General Motors, and had recently been transferred from Texas to Kansas. N.H. gave the man she believed to be Jaylen her address, and he arrived at her house about an hour later with an unidentified friend.

---

[1] Respondent filed an <u>Answer And Return</u> (Doc. #14) and petitioner filed a <u>Traverse And Return</u> (Doc. #22). Petitioner also filed multiple letters or supplements to his traverse. <u>See</u> letter (Doc. #23) filed March 5, 2019; letter (Doc. #25) filed March 27, 2019; letter (Doc. #26) filed October 2, 2019.

The man N.H. knew as Jaylen was actually named Robert Wilson. N.H. got into Wilson's car—still believing his name was Jaylen. After dropping off his friend at an apartment, Wilson went to a convenience store where he purchased alcohol. Subsequently, Wilson drove to a duplex where he claimed his cousin lived. Wilson tried several times to get N.H. to go in the duplex, but she refused.

A little while later, Wilson came out of the duplex and yelled back that he was going to the movies. Wilson then drove N.H. to an area with which she was unfamiliar—not near the movie theater that he told her they were going to. N.H. later testified that she saw a sign for Quindaro shortly before Wilson turned onto a road marked "No Outlet."

Wilson drove the car to the end of the road next to some train tracks. N.H. did not see any businesses or houses in the area, but she recalled seeing a field with horses. Wilson stopped the car and asked to borrow N.H.'s phone. After Wilson made a call, N.H. asked for her phone back. Wilson refused and told her to shut up. N.H. started to open her door, but Wilson leaned over her, pulled the door shut, locked it, and told her if she tried to get out of the car again he would break her jaw.

Wilson told N.H, that she better do what he said if she wanted to make it home. He then ordered her to perform oral sex. According to N.H., she did so because she was afraid of what would happen to her if she refused. Shortly thereafter, Wilson took off N.H.'s underwear and told her to get into the back seat. Wilson opened the back driver's side door, pulled his pants down halfway, got on top of N.H., and forced his penis into her vagina.

Wilson raped her briefly until a truck pulled up behind them and asked if everything was okay. Wilson hurriedly got up and said that everything was fine. After the truck left, N.H. got back into the front seat of the car. Wilson then drove to pick up a friend for work. On the way, Wilson told N.H. that she "had some good pussy," and he asked if she was going to call him when she got home. N.H. did not respond.

When they arrived at Wilson's friend's house, a woman said that the friend had already left for work. So Wilson drove to a convenience store to get some gas. Seeing an opportunity to get away, N.H. grabbed her phone from under the driver's seat and went into the store. Wilson drove away.

N.H. called her mother and then called a friend to come pick her up. Before leaving the convenience store, N.H.'s friend flagged down a police officer and told him that N.H. had been raped. N.H. then went to Truman Medical Center where she consented to a rape examination. DNA from the rape kit examination was positive for Wilson. After initially telling investigators that he had never met N.H., Wilson later admitted that he had sex with N.H. According to Wilson, however, the sex

was consensual and did not involve a rape.

Over Wilson's objection, the State presented evidence at trial of another woman's allegation that Wilson had raped her. Evidently, Wilson had previously been tried in Missouri and acquitted of the charge. The other alleged victim, N.L., testified that about a month prior to the rape of N.H., she had also met a man calling himself Jaylen on a chat line. The man, later identified as Wilson, said that it was his birthday, that he worked at General Motors, that he lived by the Legends, and that he had recently moved from Texas to Kansas.

N.L. testified that she and Wilson—who she still believed to be Jaylen—were supposed to go out to dinner. Instead, Wilson came to her apartment shortly after 9:00 p.m. with a friend. According to N .L., she had a 2–month–old baby and did not want to go out that late. Wilson asked if he could stay awhile and have his friend pick him up later. N.L. agreed and Wilson's friend left.

After sitting on the couch talking, Wilson and N.L. went upstairs to watch a movie. Wilson and N.L. attempted to get the baby to go to sleep and were eventually successful. Once the baby was asleep, Wilson asked N.L. to get into her "birthday suit." N.L. testified that when she refused, Wilson said "bitch, you gonna quit playing with me. You gonna give me some pussy."

According[] to N.L., she reached for her phone but Wilson took it from her. He then pulled out a pocket knife and the two struggled. N.L. testified that Wilson threatened her baby with the knife, eventually choked her unconscious with a bed sheet, and had sex with her without her consent. When she regained consciousness, Wilson came out of the bathroom and gave her a hug. After Wilson's friend picked him up, N.L. called 911 and went to the hospital for a rape kit examination.

At the trial of the present case, Wilson testified in his own defense. He admitted that he had sex with both N.H. and N.L. But he claimed that both N.H. and N.L. had consented to having sex with him. Wilson testified that he met N.H. on a chat line. In fact, he testified that he liked to use chat lines because women knew what he wanted and he knew what they wanted. He also admitted telling N.H. that it was his birthday, although his actual birthday was more than a month earlier. Nevertheless, on cross-examination, Wilson admitted that in both cases he initially told investigators he did not know the alleged victims and that he had never had sex with anyone he had met on a chat line.

Wilson corroborated N.H.'s testimony about the various stops they made in the car. But he asserted that N.H. wanted to go somewhere secluded to get high, so he went down a one-way street near Quindaro where there were some horses. According to Wilson, he and N.H. got high and had sex until some men pulled up in a truck to ask if everything was alright. Wilson and N.H. said yes, laughing because they

> got caught "doing the hanky panky."
>
> Wilson further testified that he and N.H. drove to the house of one of his friends, who was not home. They then drove to a convenience store for gas. Wilson claimed that he left N.H. at the convenience store because he had to go to work. He indicated that N.H. might have been upset that he met her on the chat line, used her for sex, and then left her at the store.
>
> Wilson also admitted that he met N.L. on a chat line. He testified that he told her he was looking for a one-night stand and he agreed to pay her for sex. Wilson corroborated N.L.'s story about watching movies and trying to calm her fussy baby. But he said that after they had consensual sex, N.L. upped the price that she was charging. According to Wilson, he told N.L. that he was not going to pay the higher price, and she said that he would pay one way or another.

State v. Wilson, 314 P.3d 900 (Table), 2013 WL 6726263, at *1-3 (Kan. Ct. App. 2013), rev. denied, (Kan. Jan. 15, 2015), cert. denied, 135 S. Ct. 2902 (June 29, 2015).

On April 2, 2009, in the District Court of Wyandotte County, Kansas, a jury found petitioner guilty of aggravated criminal sodomy and rape. The state court sentenced petitioner to a controlling sentence of 586 months in prison.

Petitioner appealed his conviction and sentence. On December 13, 2013, the Kansas Court of Appeals affirmed. See id. at *11.

Joshua Allen initially represented petitioner in state district court. Before trial, Craig Lubow replaced Allen as counsel. Christina M. Kerls of the Kansas Appellate Defender Office represented petitioner on direct appeal.

On September 2, 2015, petitioner filed a pro se motion under K.S.A. § 60-1507. He asserted numerous claims of ineffective assistance, including that trial counsel (1) failed to secure a transcript of his Missouri trial, (2) failed to subpoena his Missouri trial counsel; and (3) did not effectively cross-examine the victim from the Missouri case. See Wilson v. State, 396 P.3d 1261 (Table), 2017 WL 2709846, at *1-2 (Kan. Ct. App. 2017), rev. denied, (Kan. Oct. 25, 2017). On

September 11, 2015, the state district court summarily dismissed the motion without a hearing. On June 23, 2017, the Kansas Court of Appeals affirmed. See id.

In the instant action under 28 U.S.C. § 2254, petitioner claims that (1) the state district court violated the constitutional prohibition on double jeopardy because it admitted evidence of a prior crime for which he had been acquitted; (2) the prosecution failed to present sufficient evidence that he committed rape and aggravated criminal sodomy under circumstances where the victim was overcome by both force and fear; (3) the state district court erred in overruling without an evidentiary hearing his motion for new trial based on ineffective assistance of counsel; (4) the state district court violated his right to counsel because it overruled his motion for new trial without appointing separate counsel to argue the motion; (5) the state district court violated his due process rights because it enhanced his sentence based on criminal history without a jury finding on the issue; (6) trial counsel provided ineffective assistance because he did not use the transcript of the prior Missouri trial to impeach N.L.; (7) the state district court erred in admitting evidence of the prior crime under K.S.A. § 60-455; and (8) the state district court judgment should be reversed based on the cumulative effect of the above errors.

## Analysis

The Court reviews a state prisoner's challenge to his conviction in state court under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013). The Court may issue a writ of habeas corpus only if petitioner's state court adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1).

Under the "contrary to" clause, the Court will grant relief only if a state court reaches (1) a conclusion opposite to that reached by the United States Supreme Court on a question of law or (2) a different result from the Supreme Court on "materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" clause, the Court will grant relief only when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. To warrant relief, petitioner must establish that the state court ruling is "objectively unreasonable, not merely wrong; even clear error will not suffice." Virginia v. LeBlanc, ––– U.S. –––, 137 S. Ct. 1726, 1728 (2017) (per curiam) (internal quotation marks omitted). Petitioner must establish that the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." Id. (internal quotation marks omitted).

## I. Admission of Prior Crime Evidence (Claims 1 and 7)

Petitioner asserts that the state district court erred in admitting evidence of the Missouri crime involving N.L. Specifically, petitioner argues that the state court (1) violated his rights under the Double Jeopardy Clause because he had been acquitted in the Missouri case and (2) erred because the evidence was not relevant or material to the Kansas case.

### A. Double Jeopardy (Claim 1)

Petitioner argues that the state district court violated his rights under the Double Jeopardy Clause because it admitted evidence of a similar crime for which he had been acquitted. Petitioner raised this claim on direct appeal. The Kansas Court of Appeals rejected petitioner's claim, reasoning as follows:

> Collateral estoppel is embodied in the Fifth Amendment to the United States Constitution, which prohibits double jeopardy. *Ashe v. Swenson,* 397 U.S. 436, 442–46, 90 S. Ct. 1189, 25 L.Ed.2d 469 (1970). Collateral estoppel means that "[w]hen an issue of ultimate fact has once been determined by a valid and final verdict or judgment that issue cannot again be litigated between the *same parties* in any future lawsuit." (Emphasis added.) *State v. Irons,* 230 Kan. 138, 143, 630 P.2d 1116 (1981) (citing *Ashe,* 397 U.S. at 443). In the criminal context, this issue arises when the State seeks to use evidence of a prior crime for which a defendant was acquitted to support a subsequent charge. See, *e.g., Irons,* 230 Kan. at 142.
>
> Even when there has been an acquittal, evidence of a prior crime is admissible under K.S.A.2012 Supp. 60–455 so long as principles of collateral estoppel do not lead to a violation of double jeopardy. *Irons,* 230 Kan. at 139–40. See generally Annot., 25 A.L.R.4th 934–76 (admissibility of evidence as to other offense as affected by defendant's acquittal of that offense). Whether double jeopardy or collateral estoppel bars admission of the evidence turns on a case – specific inquiry – whether the jury necessarily acquitted the defendant based on the same fact that the State is seeking to prove in the subsequent case. *Irons,* 230 Kan. at 143–44.
>
> For a number of reasons, the admission of the facts surrounding Wilson's acquittal in Missouri does not violate double jeopardy or collateral estoppel. First, the State of Kansas was not a party to the Missouri case, and there is no privity between the parties, which is required for collateral estoppel. *Williams v. Evans,* 220 Kan. 394, 396, 552 P.2d 876 (1976). See generally 47 Am.Jur.2d, Judgments § 625, p. 198 ("generally . . . no privity exists between . . . the governments of different states"). Second, the Missouri case involved a different incident, a different time, a different location, and a different victim. Third, Wilson was not exposed to the possibility of being convicted for the rape of N.L. in the present case. Fourth, the issue of N.H.'s consent or lack of consent on July 7, 2008, was not litigated in the Missouri case. Fifth, and perhaps most important, a finding that N.L. consented in the first case is not inconsistent with a finding that N.H. did *not* consent in this case.

Wilson, 2013 WL 6726263, at *4.

The Kansas Court of Appeals correctly identified the governing federal rule in Ashe. The Kansas Court of Appeals reasonably applied federal law which is consistent with its holding that the Double Jeopardy Clause and collateral estoppel principles do not prohibit admission of facts from the Missouri case. See Oliphant v. Koehler, 594 F.2d 547, 554–55 (6th Cir. 1979) (evidence of prior offenses admissible where issue in prior rape trials was consent and evidence in current trial presented to show plan); see also Heath v. Alabama, 474 U.S. 82, 88 (1985) (under dual

-7-

sovereignty doctrine, double jeopardy clause does not bar successive prosecutions by two states for same conduct); Turley v. Wyrick, 554 F.2d 840, 842 (8th Cir. 1977) ("collateral estoppel doctrine does not apply when different sovereigns and, thus, different parties are involved in the litigation"). Likewise, petitioner has not shown that the state court unreasonably determined the facts. The Court denies relief on petitioner's first claim.

### B. K.S.A. § 60-455(d) (Claim 7)

Petitioner asserts that the state court erred under K.S.A. § 60–455(d) because evidence of the crime involving N.L. was not relevant or material to the Kansas case involving N.H. On direct appeal, petitioner cited only state authority for his claim. See Brief Of Appellant, 2013 WL 2182846, at *13-25 (Apr. 17, 2013). Likewise, the Kansas Court of Appeals rejected his claim based solely on state law. See Wilson, 2013 WL 6726263, at *6-7. Under federal habeas review, the Court cannot "reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). Because petitioner's claim relies solely on state law, the Court denies relief. Id. at 72 (habeas relief not permitted based on belief that trial judge incorrectly interpreted state evidentiary rule on admissibility of prior bad acts).

To the extent petitioner's claim could be construed to assert that the state district court violated his due process rights by admitting unreliable evidence, the Court denies relief. To violate an individual's due process rights, evidence must be so unreliable that it creates a fundamentally unfair trial. See Perry v. New Hampshire, 565 U.S. 228, 237 (2012); see also Marshall v. Lonberger, 459 U.S. 422, 438, n.6 (1983) (Due Process Clause does not permit federal courts to engage in finely tuned review of wisdom of state evidentiary rules); Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990) (absent fundamental unfairness, errors in admissibility of evidence not grounds for habeas relief). The Supreme Court has noted that "the potential

unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair."  Perry, 565 U.S. at 245.

Under K.S.A. § 60-455(d), a court may allow evidence of another act or offense of sexual misconduct "for its bearing on any matter to which it is relevant and probative."  K.S.A. § 60-455(d).  As evidence of petitioner's plan to create a situation in which the victim would have difficultly showing lack of consent, the state district court admitted evidence involving N.L. Petitioner has not shown that admission of evidence of the Missouri crime created a fundamentally unfair trial.  As the Kansas Court of Appeals noted, "evidence of a plan to put women in situations where nonconsent would be difficult to prove is probative" of the issue of consent.  2013 WL 6726263, at *7.  Trial counsel cross examined N.L., the jury weighed her credibility, the trial court instructed the jury concerning the limited purpose of N.L.'s testimony and the prosecutor clarified that evidence from the Missouri case related only to petitioner's plan or method.  See State Court Records, Vol. 6, Transcript Of Jury Trial at 330-51(cross-examination of N.L.); id. at 499, 515 (prosecutor: evidence to show plan and method); Instructions To The Jury, No. 14 (evidence of prior crime may be considered solely for purpose of proving defendant's "plan, preparation and method"); see Estelle, 502 U.S. at 75 (limiting instruction mitigated potential prejudicial effect of evidence of prior offenses).  Petitioner has failed to show that evidence of the crime involving N.L. was so unreliable that it created a fundamentally unfair trial.  Accordingly, the Court denies habeas relief on this ground.  See Perry, 565 U.S. at 237, 245.

## II.     Proof Of Alternate Means (Claim 2)

Under Kansas law, rape includes sexual intercourse with a person who does not consent "[w]hen the victim is overcome by force or fear."  K.S.A. § 21-3502(a)(l)(A).  Aggravated criminal sodomy includes sodomy with a person who does not consent "[w]hen the victim is

overcome by force or fear." K.S.A. § 21-3506(a)(3)(A). Petitioner asserts that the state district court violated his due process rights because the evidence was insufficient to support his convictions for rape and aggravated criminal sodomy under both alternate means of "force" and "fear."

On direct appeal, the Kansas Court of Appeals rejected petitioner's claim based solely on state law. It reasoned that "[s]exual intercourse with a person who does not consent under circumstances when the victim is overcome by force or fear, in violation of K.S.A. 21–3502(a)(l)(A), is a single, unified means of committing rape." Wilson, 2013 WL 6726263, at *7 (quoting Wright v. State, 48 Kan. App.2d 593, Syl. ¶ 4, 294 P.3d 1201 (2013)). Likewise, it concluded that under Kansas statute, "force and fear are not alternative means to commit aggravated criminal sodomy." Id.

Petitioner raises a due process challenge to the sufficiency of the evidence. See Petition Under 28 U.S.C. § 2254 (Doc. #1) at 6-7; Appellant's Brief, 2013 WL 2182846, at *25. Due process requires that the evidence viewed in the light most favorable to the prosecution be sufficient to allow "*any* rational trier of fact [to] have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see Pavatt v. Carpenter, 928 F.3d 906, 917 (10th Cir. 2019) (sufficiency of evidence is "fundamental protection of due process of law"). On habeas review, however, this Court must accept the state court's interpretation of the elements of an offense including whether the Kansas statutes set forth alternate means of the offenses. Estelle, 502 U.S. at 67-68 (not province of federal habeas court to reexamine state determinations on state law questions). Petitioner's due process challenge to the sufficiency of the evidence depends entirely on the assumption that rape and aggravated criminal sodomy convictions under the Kansas statute require the prosecution to

prove that petitioner overcame the victim by both "force" and "fear." Because the state court ruled against petitioner based solely on state law and he does not challenge the sufficiency of the evidence that N.H. was overcome by "fear," the Court denies relief on his claim.[2]

## III. Motion For New Trial And Ineffective Assistance Of Trial Counsel (Claims 3, 4 & 6)

Petitioner brings three related claims that challenge the ruling on his motion for new trial and the performance of trial counsel. First, petitioner claims that trial counsel provided ineffective assistance because he did not use the transcript of the prior Missouri trial to impeach N.L. (Claim 6). Next, petitioner claims that the state district court erred in overruling his motion for new trial which asserted ineffective assistance, without an evidentiary hearing (Claim 3) or appointment of counsel to argue his motion (Claim 4).

### A. Ineffective Assistance Of Trial Counsel (Claim 6)

Petitioner asserts that trial counsel provided ineffective assistance because he did not use the transcript of the prior Missouri trial to impeach N.L. To establish ineffective assistance under federal law, petitioner must show (1) that the performance of counsel was deficient and (2) a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). To establish deficient performance, petitioner must prove that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In other words, petitioner must prove that counsel performed "below an objective standard of reasonableness." United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992). The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the

---

[2] Based on N.H.'s testimony alone, a rational trier of fact could have easily found that she was overcome by fear.

wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

In evaluating ineffective assistance claims under Section 2254, the question "is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (internal quotation marks omitted). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations")).

Petitioner asserts that trial counsel provided ineffective assistance because he did not use the transcript of the prior Missouri trial to impeach N.L. Petitioner raised several related claims in state court. On direct appeal, the Kansas Court of Appeals rejected petitioner's claim that trial counsel was ineffective because he did not call as a witness petitioner's trial counsel from the Missouri case. In his Section 60-1507 motion, petitioner asserted numerous claims of ineffective assistance, including that trial counsel (1) failed to secure a transcript of his Missouri trial to impeach N.L., (2) failed to subpoena his Missouri trial counsel; and (3) did not effectively cross-examine N.L. As noted, the state district court summarily overruled petitioner's claims. On appeal, the Kansas Court of Appeals rejected petitioner's ineffective assistance claims under res judicata principles because all three interrelated claims should have been raised on direct appeal. See Wilson, 2017 WL 2709846, at *2. In addition, the Kansas Court of Appeals found that petitioner's ineffective assistance claims lacked merit, stating as follows:

> To prevail on a claim of ineffective assistance of counsel, a defendant must first

establish that the performance of counsel was deficient under the totality of the circumstances, and, if so that the defendant was prejudiced, *i.e.*, that there is a reasonable probability that the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed. 2d 674, reh. denied 467 U.S. 1267 [1984]). In this context, reasonable probability means a probability sufficient to undermine confidence in the outcome. [*State v.*] *Sprague*, 303 Kan. [418,] 426[, 362 P.3d 828 (2015)]. * * * *

Wilson's . . . arguments regarding the alleged failure of trial counsel to obtain a transcript of his Missouri trial and his arguments regarding failure to effectively cross-examine the Missouri victim/witness are inextricably interrelated. The record is not entirely clear whether Wilson's trial counsel actually secured a copy of the transcript, but in colloquy with the trial court, there is some indication he had access to and familiarity with the Missouri trial transcript. He indicated to the trial court he made a strategic decision not to seek entry of the transcript, so as not to prejudice or conflict with his objection to the State's K.S.A. 60-455 evidence. The record clearly indicates that he met with the Missouri attorney prior to the trial and was thoroughly familiar with the Missouri proceedings. He also had access to a deposition which the Missouri victim/witness had given prior to the Kansas trial, and he thoroughly cross-examined her. In his closing argument, he demonstrated numerous inconsistencies in her testimony. He emphasized that the Missouri jury had acquitted Wilson, and he urged the Kansas jury to consider that verdict when evaluating her testimony in the Kansas case.

More to the point here, beyond mere conclusory allusions regarding unspecified "wild inconsistent statements," Wilson fails to articulate how the Missouri transcript would have assisted his attorney in offering anything more or less than what the jury had already heard. The State presented the detailed testimony of the Kansas victim together with other evidence tending to corroborate her recollection of the events. Wilson fails to suggest what testimony or impeachment of the Missouri victim/witness was missing from the Kansas trial or how any such omissions would have affected the jury's assessment of the credibility of the Kansas victim.

Wilson's motion, on its face, is simply inadequate to demonstrate ineffective assistance of counsel, much less any potential prejudice. He has raised no factual issue or legal question which would in any way undermine our confidence in the jury verdict.

Wilson, 2017 WL 2709846, at *3.

The Kansas Court of Appeals correctly identified the governing rules for ineffective assistance claims, which track the federal rules set forth in Strickland. The Kansas Court of

-13-

Appeals did not reach a conclusion that was contrary to federal law and did not unreasonably apply established federal law when it held that counsel's performance was adequate and that any alleged errors in the cross-examination of N.L. did not prejudice petitioner. See Kessler v. Cline, 335 F. App'x 768, 770 (10th Cir. 2009) (manner in which counsel cross-examines witness is strategic choice and therefore "virtually unchallengeable") (quoting Strickland, 466 U.S. at 690); Pickens v. Gibson, 206 F.3d 988, 1002 (10th Cir. 2000) (trial strategy includes determining how best to cross-examine witnesses); Church v. Sullivan, 942 F.2d 1501, 1513 (10th Cir. 1991) (defendant bears burden of establishing how more extensive cross-examination would have changed outcome of trial). Likewise, petitioner has not shown that the state court unreasonably determined the facts. Accordingly, the Court denies relief on petitioner's sixth claim.[3]

### B. Denial Of Evidentiary Hearing On Motion For New Trial (Claim 3)

Petitioner asserts that the state court should have held an evidentiary hearing on his motion for new trial based on ineffective assistance "[b]ecause the record did not conclusively show that Mr. Wilson was entitled to no relief." Petition Under 28 U.S.C. § 2254 (Doc. #1) at 7. On direct appeal, the Kansas Court of Appeals rejected petitioner's claim, reasoning as follows:

> Wilson alleged that his counsel failed to call three witnesses that were necessary to his defense: (1) his defense counsel in the Missouri case against him for the alleged rape of N.L., (2) a friend that was riding with him and N.H. on the afternoon of the incident that led to the current case, and (3) a man from whom he claimed to purchase drugs on the afternoon of the current case.
>
> Strategic choices made after a thorough investigation of the law, the facts, and the realistically available options are virtually unassailable. [*State v.*] *Cheatham,* 296 Kan. [417,] 437[, 292 P.3d 318 (2013)]. Here, the district court appropriately sought an explanation from Wilson's trial attorney regarding the allegations of

---

[3] Respondent also asserts that petitioner's claim based on trial counsel's failure to obtain the transcript of the Missouri trial is procedurally barred because he failed to raise this issue on direct appeal. The Court need not address the procedural bar issue because the record establishes that the claim lacks merit.

> ineffective counsel. The attorney advised the district court that he had spoken with Wilson's defense attorney in the Missouri case and felt that she did not have anything helpful to offer in the current case. As to the friend who rode with Wilson and N.H. on the afternoon in question, the attorney represented that his client had failed to provide him with any contact information. In fact, Wilson either could not or would not give his friend's name at trial. Additionally, the trial attorney said he and Wilson were in agreement that there was no practical way to get his alleged drug dealer to testify in court about selling illegal drugs.
>
> We find—as did the district court—that there was no indication in the record that the performance of Wilson's trial attorney was deficient or ineffective. Furthermore, we find that Wilson failed to establish prejudice by the actions taken by his trial attorney. As the district court appropriately noted, there was no material dispute about the events that led up to the rape. So the additional witnesses Wilson wanted to call would have added little, if anything, to his defense. Thus, we conclude that the district court did not abuse its discretion in denying Wilson's motion for new trial without a full evidentiary hearing.

Wilson, 2013 WL 6726263, at *9.

Respondent argues that petitioner's claim is rooted solely in state law because it only involves the state court's discretionary decision not to hold an evidentiary hearing. Petitioner's claim is not so limited because the state court's decision not to hold a hearing was intertwined with the substantive merit of petitioner's claims of ineffective assistance. Even so, petitioner has not shown that he is entitled to habeas relief.

Based on petitioner's pro se motion for new trial and the statements of counsel and petitioner, both the trial court and state appellate court could discern no viable claim of ineffective assistance. See id.; see also State Court Records, Vol. 9, Transcript Of Motion Hearing [On January 6, 2012] at 13 ("I can find nothing based upon what you've told me here today and my recollections of the trial that result in any viable charge of ineffective assistance of counsel."). As with his claim that counsel did not use the transcript of the Missouri trial to impeach N.L., see supra text, Analysis, part III.A., petitioner has not shown that the state court adjudication of this claim was contrary to or involved an unreasonable application of established federal law, or was

based on an unreasonable determination of the facts. See, e.g., Horn v. Kansas, No. 18-3258, 2019 WL 4233878, at *7 (10th Cir. Sept. 6, 2019) (strategic decisions like which witnesses to call and what evidence to present left to counsel discretion). Accordingly, the Court denies relief on petitioner's third claim.

### C. Denial Of Counsel To Argue Motion For New Trial (Claim 4)

Petitioner's fourth claim asserts that the state district court denied him the right to counsel to argue his motion for new trial based on a claim that Lubow provided ineffective assistance. On direct appeal, the Kansas Court of Appeals rejected this claim. It noted that petitioner had no statutory right to counsel for each and every post-trial motion and a decision to appoint counsel "rests within the sound discretion of the trial court." Wilson, 2013 WL 6726263, at *9 (quoting State v. Kirby, 272 Kan. 1170, Syl. ¶ 14, 39 P.3d 1 (2002)). It reasoned that because petitioner's motion for new trial was untimely and did not raise a substantial question of law or fact, he did not have a constitutional right to counsel to argue his claim. Id. at *9-10.

Petitioner has not shown that he is entitled to habeas relief on his claim. The Tenth Circuit has rejected a nearly identical claim, reasoning as follows:

> [T]he ineffective assistance contention was made in an untimely pro se motion. The Kansas Court of Appeals determined that the motion contained no realistic basis for obtaining a new trial, and so held that the trial court had not abused its discretion in declining to appoint counsel for the issue. This holding must be sustained under the standards of the AEDPA, which we must apply. The state court's holding was neither contrary to, nor an unreasonable application of, firmly established United States Supreme Court precedent, see 28 U.S.C. § 2254(d)(1), nor an unreasonable determination of the facts in light of the evidence presented, see id. § 2254(d)(2). Our analysis under AEDPA need go no further.

Mathis v. Bruce, 148 F. App'x 732, 736 (10th Cir. 2005). For substantially the reasons stated in Mathis, the Court denies relief on petitioner's right to counsel claim.

Liberally construed, petitioner's fourth claim also asserts that the state district court's

failure to appoint counsel to argue his motion for new trial violated his due process rights. The Kansas Court of Appeals rejected this claim, stating as follows:

> Wilson also argues that due process entitled him to the appointment of an attorney, and this is a closer question. The Kansas Supreme Court has held that in a hearing in which the State is represented, due process requires that a defendant be represented even if there is not otherwise a right to a hearing or appointed counsel. See *State v. Hemphill,* 286 Kan. 583, 596, 186 P.3d 777 (2008); *State v. Pierce,* 246 Kan. 183, 199, 787 P.2d 1189 (1990). Here, the district court asked for the State's response to Wilson's allegations of ineffective assistance, and the State argued against his motion. Because Wilson's then-appointed counsel was explaining that he did not provide ineffective assistance, Wilson was left to argue his own motion essentially unrepresented.
>
> Nevertheless, Wilson still needed to establish "some realistic or reasonable grounds" for his claim to be entitled to counsel. *Pierce,* 246 Kan. at 199. * * *
>
> * * * Wilson's motion was untimely, and he did not have any statutory or constitutional right to counsel in the proceeding. While it is true that counsel represented the State and that no attorney argued on Wilson's behalf, the district court allowed Wilson to express his position. But Wilson . . . made no showing that his claim of ineffective assistance had a realistic basis.

Wilson, 2013 WL 6726263, at *10-11.

In addition to the reasons stated by the Kansas Court of Appeals, the Court notes that petitioner did not request counsel for purposes of arguing the motion for new trial and the transcript reveals that he was able to adequately present his claim. In these circumstances, petitioner has not shown that the state court adjudication of this claim was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. The Court denies relief on petitioner's claim.

**IV.     Use Of Prior Conviction To Enhance Sentence (Claim 5)**

Petitioner claims that the state court violated his due process rights because it enhanced his sentence based on criminal history without a jury finding on the issue. On direct appeal, the Kansas Court of Appeals rejected petitioner's claim. Wilson, 2013 WL 6726263, at *11. The

-17-

Supreme Court has held that prior convictions are an exception to the general rule that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Blakely v. Washington, 542 U.S. 296, 301 (2004); Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Accordingly, the state court's resolution of petitioner's challenge to his enhanced sentence was not contrary to or an unreasonable application of existing United States Supreme Court precedent. See United States v. Pullen, 913 F.3d 1270, 1277 (10th Cir. 2019) (despite general prohibition on judicial factfinding at sentencing, exception exists for criminal history); Hunter v. Werholtz, 505 F.3d 1080, 1081-82 (10th Cir. 2007) (on habeas review, rejecting claim that state use of prior convictions for sentencing purposes violates Apprendi). Accordingly, the Court denies petitioner's fifth claim.

## V. Cumulative Error (Claim 8)

Petitioner asserts that the district court's various errors resulted in cumulative error. Cumulative error analysis is an extension of harmless error analysis. See Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir. 2003). On habeas review, the Court evaluates whether cumulative errors "had substantial and injurious effect or influence in determining the jury's verdict." Id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 629–33 (1993)). The Kansas Court of Appeals found no error, and this Court agrees. Accordingly, petitioner cannot prevail on his habeas claim based on cumulative error.

## Conclusion

For the above reasons, the Court denies the petition for a writ of habeas corpus. Petitioner has failed to establish that the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Court reaches this result through examining the state court record and concludes that no evidentiary hearing is required. See Schriro, 550 U.S. at 474 (evidentiary hearing not needed on issues resolved by state court record).

**Certificate Of Appealability**

Under Rule 11 of the Rules Governing Section 2254, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253. A petitioner meets this standard by showing "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons stated above, the Court finds that petitioner has not satisfied this standard. The Court denies a certificate of appealability as to its ruling on petitioner's Section 2254 petition.

**IT IS THEREFORE ORDERED** that Wilson's pro se Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (Doc. #1) filed March 1, 2018 is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability as to the ruling on petitioner's Section 2254 petition is **DENIED**.

Dated this 8th day of October, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil<br>
KATHRYN H. VRATIL<br>
United States District Judge